UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ANGELA M.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:21cv240 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for Supplemental Security Income (SSI) under Title XVI of the Act, § 1383(c)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months.

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

. . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2

2. The claimant has not engaged in substantial gainful activity since April 24, 2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: left hip osteoarthritis; back disorder, discogenic and degenerative; obesity; essential hypertension; chronic obstructive pulmonary disease; anxiety; depression; and spine disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasionally lift and/or carry 20 pounds; frequently lift and or carry 10 pounds; stand and/or walk 4 hours in an 8-hour work day with normal breaks; sit for a total of 6 hours in an 8-hour work day with normal breaks; occasionally climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; occasionally balance and stoop; occasionally kneel, crouch and crawl; never exposed to unprotected heights and dangerous machinery; occasionally exposed to extreme cold and extreme heat; occasionally exposed to dusts, odors, fumes and pulmonary irritants; limited to perform simple routine tasks; and occasional contact with supervisors, coworkers and the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 24, 1973 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act,

>from April 24, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-23).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on December 3, 2021. On January 14, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on January 28, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

>The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff was born on February 24, 1973 and was 45 years old on her alleged onset date. (Tr. 21). She has at least a high school education. She has past work as a certified nurse assistant, a

4

correctional officer, a machine operator, and a custodian. *Id*.

A lumbar spine MRI on January 27, 2017 showed that Plaintiff had multilevel chronic disc degeneration and spondylosis that was asymmetrically worse on the right at L5-S1 and on the left at L4-5. (Tr. 475). Plaintiff presented for evaluation of her back and hip pain by pain management physician Samiullah Kundi on May 12, 2017. (Tr. 488). She had an antalgic gait and station. (Tr. 489). Dr. Kundi provided a left intra-articular joint injection on June 8, 2017. (Tr. 485). Plaintiff followed up with Dr. Kundi on July 21, 2017. (Tr. 480). She still had an antalgic gait and station on examination. (Tr. 481). A nerve conduction study on August 30, 2017 indicated results consistent with chronic left L4 lumbar radiculopathy. (Tr. 478).

Plaintiff consulted with orthopedist Kartheek Reddy on October 13, 2017. (Tr. 496). Dr. Reddy assessed severe degenerative joint disease of the left hip and planned a left total hip arthroplasty. (Tr. 497).

Dr. Xavier Laurente conducted a physical consultative examination of Plaintiff on February 22, 2019. (Tr. 522). He observed a slow gait with poor sustainability and a left-sided limp, noting that Plaintiff could not walk on her heels or tandem walk and was only somewhat able to squat. (Tr. 527). He believed Plaintiff was cooperative. *Id*. Straight leg raising was "somewhat positive" on the left when seated and supine. (Tr. 528). He recorded reduced strength at 3/5 in the left upper extremity. (Tr. 529). Plaintiff had reduced range of motion in her lumbar spine, shoulders, knees, and hips. (Tr. 530). In his final assessment, Dr. Laurente believed that Plaintiff's left hip pain "could impact her ability to do work" and that she "might benefit from avoiding lifting/carrying heavy objects." (Tr. 531).

Plaintiff saw pain management physician Edgar Martinez on May 20, 2019 for her back and joint pain. (Tr. 569). Plaintiff's BMI was 30.87, and she had an antalgic and guarded gait and

5

station. (Tr. 570). Palpation of the lumbar facet joints at L3-4, L4-5, and L5-S1 produced lower back pain. (Tr. 571). Anterior flexion, hyperextension, bilateral lateral flexion/bending and bilateral lateral rotation caused pain. Bilateral straight leg raising tests were positive. Left Faber test was also positive. Plaintiff had full strength but diminished sensation in the left leg. *Id*. Dr. Martinez prescribed Tylenol with codeine. (Tr. 572). Plaintiff presented to physician assistant Haley Innocenti on June 17, 2019 for pain management evaluation. (Tr. 562). Plaintiff was overweight, with a BMI of 29.99, and she had an antalgic gait and station. (Tr. 563).

Plaintiff participated in physical therapy for her lower back pain and generalized muscle weakness over 6 visits between July 26 and September 6 of 2019. (Tr. 548). At discharge, strength in her hips, knees, and lumbar spine remained decreased, around 3/5 across the board, and she continued to have decreased range of motion in her lower back and hips. (Tr. 550). Her physical therapist classified her "as one with severe disability." *Id*.

Plaintiff presented to Physician Assistant Jie Xu on August 1, 2019 for pain management evaluation. (Tr. 558). She was observed to be obese with a BMI of 30.7. (Tr. 559-60). Plaintiff had an antalgic gait and station. (Tr. 560). While she had full strength in her lower extremities, Patrick's test could not be completed due to limited range of motion, and left trochanteric bursa palpation reproduced lower back and hip pain. *Id*. A left hip joint injection was provided. (Tr. 561).

Plaintiff consulted with orthopedist Clifford Evans regarding her left hip pain on August 15, 2019. (Tr. 581). Once more, a left total hip arthroplasty was planned. (Tr. 582). On October 7, 2019, the surgical procedure was performed. (Tr. 606.) Plaintiff was ambulating with a cane at postoperative follow-up on October 21, 2019. (Tr. 607).

An MRI of the thoracic spine on June 8, 2020 showed spondylosis at T7-8 with mild to

6

moderate central stenosis, facet osteoarthropathy with minimal central stenosis at T12-L1, cord signal abnormality within the upper spinal cord, and a left adrenal mass. (Tr. 615). An MRI of the cervical spine on that same date showed multilevel cervical spondylosis, most significantly at C5-6 and C6-7 with prominent bilateral foraminal narrowing and moderate to severe central stenosis, along with cord edema or myelomalacia within the spinal cord from C5-6 to mid-C7 and mild left C7-T1 facet synovitis. (Tr. 616). Plaintiff saw orthopedist Jason Alder on June 30, 2020 to address cervical spine pain. (Tr. 617). On examination, she had decreased sensation in C6 and C7 distributions in both hands and forearms. (Tr. 618). Dr. Alder opined, "She has severe stenosis of the cervical spine at C5-6 and C6-7, accompanied by myelomalacia, which are causing obvious cervical myelopathy, manifested by gait imbalance, decreased sensation and decreasing dexterity in her hands, and [hyperreflexia] of the lower extremity reflexes. She need[s] surgical decompression and likely fusion of the cervical spine." (Tr. 619). He discussed with her that even after the decompression, she may still have symptoms. *Id*.

On October 17, 2018, State agency physician Dr. Sands reviewed the existing evidence and concluded that there was insufficient evidence to establish a disability (Tr. 164). Dr. Sands noted that Plaintiff was not receiving any current treatment, that she had not returned forms or responded to letters, and that a call to Plaintiff's representative was unsuccessful (Tr. 164).

On February 28, 2019, State agency physician Dr. Corcoran reviewed the evidence, including Dr. Laurente's report (*see* Tr. 183-85). Dr. Corcoran opined that Plaintiff retained the ability to perform activities consistent with light work (as defined at 20 C.F.R. §§ 404.1567(b), 416.967(b)), with up to 4 hours of standing/walking, 6 hours of sitting (Tr. 182), and no more than occasional climbing, balancing, stooping, kneeling, crouching, crawling (Tr. 182-83).

With respect to Plaintiff's mental health, Daniel Mykut, a therapist at Four County

7

Counseling Center, provided a medical source opinion on March 12, 2019. (Tr. 539). In this statement, he assessed generalized anxiety disorder and recurrent episodes of major depressive disorder. (Tr. 535). He opined that Plaintiff had an extremely limited ability to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 538). He believed that Plaintiff had markedly limited ability to understand and remember very long and detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with and in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. (Tr. 536, 538).

  Mr. Mykut further opined that Plaintiff had a moderately limited ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, and travel in unfamiliar places or use public transportation. (Tr. 536, 538-39). He indicated that Plaintiff had deficiencies of concentration, persistence, or pace that frequently resulted in failure to complete tasks in a timely manner. (Tr. 537). He also indicated that Plaintiff had repeated episodes of deterioration in work-like settings that caused her to withdraw from the situation or else experience exacerbation of her symptoms. He said she had a complete inability to function independently outside the area of her home due to panic attacks. *Id*. He estimated that she would likely be absent from work as a result of her impairments or treatment on more than four

8

days per month. (Tr. 539). Mr. Mykut did not believe that Plaintiff would be capable of maintaining a full-time work schedule. *Id*. In support of his opinion, he cited signs and symptoms including anhedonia, appetite disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, generalized persistent anxiety, recurrent severe panic attacks, and recurrent and intrusive recollections of traumatic experiences. (Tr. 536-37).

On October 18, 2018, State agency psychologist Dr. Hill, Ph.D., reviewed the evidence, stated that there was insufficient evidence to establish a disability, and concluded that no mental impairment was established. (Tr. 165).

On February 5, 2019, State agency psychologist Dr. Neville, Ph.D., reviewed the existing evidence and also concluded that there was insufficient evidence to establish a disability. (Tr. 181). Dr. Neville concluded that no mental impairment was established. (Tr. 181).

After the hearing, treatment records from Four County Counseling Center were submitted for Appeals Council review. (Tr. 36-130). Many of these treatment records pertained to the period before the ALJ's unfavorable decision on July 24, 2020. These records include a psychiatric evaluation on April 30, 2019 in which Plaintiff presented as "tearful and irritable" and said that she "just generally can't stand people anymore." (Tr. 38). Mr. Mykut is noted as her case manager on this evaluation form. *Id*. Mr. Mykut's first session with Plaintiff was on February 12, 2019; he noted that she "was in good affect" and "held conversation throughout the therapy session." (Tr. 54). At the next session on February 26th, Plaintiff reported increasing anxiety, and Mr. Mykut observed that she had difficulty sitting for long periods and would readjust in her chair. (Tr. 55).

On March 12th, Plaintiff reported a high level of irritability, and Mr. Mykut observed that Plaintiff "did not display any impairment in speech" throughout the session "but some in functioning." (Tr. 56-57). Plaintiff appeared to remain stable at later sessions on August 13th,

September 10th, November 6th, and December 12th. (Tr. 70-71, 76, 78, 84). However, because of a deteriorating relationship with her boyfriend, Plaintiff was homeless by a session on February 17, 2020, and she stated that "she is a mess with her depression worsening and the anxiousness of being without a place to stay." (Tr. 92). Plaintiff had a flat affect and was "emotional throughout the session." *Id*.

On March 18, 2020, Plaintiff was working part-time and had not been able to get all her medications and was seeking a potential case manager, although she "was in good affect" for the session itself. (Tr. 93). She reported a minimal decrease in anxiety to Mr. Mykut on April 13, 2020 and remained stable at a follow-up appointment on April 27th. (Tr. 101, 103). Plaintiff appeared to remain stable at sessions on May 4th and May 18th, and Mr. Mykut planned to continue to use cognitive behavioral techniques and motivational interviewing to help her process her frustration and anger. (Tr. 104, 106).

Plaintiff reported an increase in anxiety and depression on June 2, 2020. (Tr. 108). After committing to leaving her boyfriend, Plaintiff described "relief" at a session on June 12th, but otherwise she seemed to be stable and focused on moving forward. (Tr. 110). Plaintiff reported high anxiety at a session on June 18th. (Tr. 112-13). She said her anxiety was increasing at her next session on July 6th. (Tr. 115). On July 16th, Mr. Mykut observed that Plaintiff was lethargic in speech throughout the session, and she reported trouble sleeping and staying focused that week. (Tr. 121). Plaintiff's most recent therapy session with Mr. Mykut before the hearing was on July 21st. (Tr. 123).

Mr. Mykut was not Plaintiff's only provider at Four County Counseling Center, and his therapy notes are intermingled with notes from other providers. A psychiatric evaluation on April 30, 2019 was completed by Nurse Practitioner Karen Newsome (Tr. 38), who saw Plaintiff again

on June 4, 2019 for medication management. (Tr. 63). At that visit, Plaintiff said, "If you think I was on edge before, you ain't seen nothing yet." She presented as distressed and tearful and complained about medication side effects. *Id*. She was once more distressed and tearful at her visit to Ms. Newsome on September 10th. (Tr. 72).

Plaintiff saw Nurse Practitioner Wonda Elmore for medication management on December 2, 2019, complaining that she was "still stressed the hell out." (Tr. 80). She presented with a slow gait with a noticeable limp and an anxious and depressed mood with congruent affect. (Tr. 81). On February 17, 2020, Ms. Elmore noted Plaintiff had a sad, depressed, down mood with a tearful and congruent affect. (Tr. 89). At the next visit, over the phone on April 13th, Plaintiff said her mood was "okay" and she appeared calm with a congruent affect. (Tr. 99). At a phone visit on July 6th, Plaintiff had a pleasant affect over the phone. (Tr. 118). This note also summarizes PHQ-9 and GAD-7 scores throughout the treatment period, showing a range of PHQ-9 scores between 21 and 24 and GAD-7 scores between 19 and 21. *Id*.

In support of remand, Plaintiff first argues that the Appeal Council erred in failing to evaluate new and material evidence. The Appeals Council reviewed records from Four County Counseling Center dated between February 5, 2019 and August 18, 2020. (Tr. 2). The Appeals Council found this new evidence was not "material" because some of it was not relevant to Plaintiff' disability claim and because some of it did not relate to the relevant period. (Tr. 2).

The Social Security regulations provide that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 CFR 404.970 (a) (5). In *Stepp v. Colvin*, in considering a previous version of this regulation, the Seventh Circuit clarified that if "the Council determined [a

11

claimant's] newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence 'non-qualifying under the regulation,' we retain jurisdiction to review that conclusion for legal error." 795 F.3d 711, 722 (7th Cir. 2015); *see also Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012); *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993); *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

The parties agree that the evidence in question was "new" as the records were submitted after the hearing. However the parties dispute whether the evidence was "material". Plaintiff points out that, with the evidence that she had at the hearing, the ALJ rejected Mr. Mykut's opinion, finding it "not persuasive, as it is not supported by contemporaneous treatment or examination notes, as well as not generally supported by the evidence as a whole. As indicated above, the record does not contain progress notes documenting the claimant's mental health treatment." (Tr. 20). The new records are, in fact, documentation of Plaintiff's mental health treatment which, Plaintiff argues, will permit the ALJ to properly consider the severity of Plaintiff's mental impairments. Plaintiff contends that the new evidence supports Mr. Mykut's opinions with ongoing documentation which would warrant giving much greater weight to his opinion.

The Commissioner downplays the importance of the new evidence, stating that it "merely documented treatment of mental health problems, and it was undisputed that Plaintiff had mental health problems and was treated for them." While this is true, the issue here is whether, had the ALJ had these records, would she have found Mr. Mykut's opinions supported and thus worthy of greater weight. The Commissioner further contends that the new evidence does not undercut the ALJ's reasons for discounting Mr. Mykut's opinion. However, as the ALJ specifically noted in her analysis of Mr. Mykut's opinion that "the record does not contain progress notes documenting the claimant's mental health treatment", it is apparent that the new evidence may very well undercut the

ALJ's reasoning. Thus, remand is necessary on this issue.

Next, Plaintiff argues that the ALJ erred by failing to have a medical expert to provide a medical opinion as to Plaintiff's physical functional limitations. At the initial level of review in October 2018, no severe impairments could be determined. (Tr. 165). At reconsideration in February 2019, Dr. J.V. Corcoran opined that Plaintiff was limited to light work with no more than four hours of standing or walking and about six hours of sitting within an eight-hour workday. (Tr. 182). The ALJ found Dr. Corcoran's opinion "persuasive, as it is consistent with treatment or examination notes, as well as generally supported by the evidence as a whole." (Tr. 20).

Plaintiff contends that there was much new objective evidence that the state agency consultants did not have when forming their opinions, and that this evidence supports her claim of disabling physical functional limitations. Plaintiff notes that while Dr. Reddy had originally planned a left total hip arthroplasty in October 2017 (Tr. 497), this was not performed until October 2019, after Plaintiff restarted orthopedic care with Dr. Evans. (Tr. 606). Plaintiff also notes that there was no evidence that she required the use of an assistive device before the surgery, but that evidence shows she needed to use a cane after surgery, and thus her condition was worsening. (Tr. 607). Additionally, physical exam findings did not typically demonstrate generalized weakness (*see* Tr. 529), yet physical therapy records between July and September of 2019 showed little improvement and greatly decreased strength in her lower extremities and lumbar spine. (Tr. 550).

Plaintiff argues that the above reflects a worsening of existing conditions, and that there is also new evidence of conditions that the consultants could not have considered at the time of their reviews. For example, MRI scans of the thoracic and cervical spine in June 2020 appear to reveal, for the first time, degenerative changes with stenosis throughout these sections of the upper and mid

13

spine, including severe narrowing and cord edema or myelomalacia in the cervical spine. (Tr. 615-16). This imaging supported clinical findings of decreased sensation in both hands and forearms by Dr. Alder later that month. (Tr. 618). Dr. Alder further explained that the imaging results provided an etiology for Plaintiff's gait imbalance, hyperreflexia of the lower extremities, and decreasing dexterity in her hands and opined that surgical decompression was needed. (Tr. 619).

The Seventh Circuit has established that an ALJ may not make medical determinations, as "there is always a danger when lawyers and judges attempt to interpret medical reports...." *Israel v. Colvin*, 840 F.3d 432 (7th Cir. 2016); citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014) (noting that administrative law judges are not permitted to "play doctor"); *see also McHenry v. Berryhill*, 911 F.3d 866, 871-872 (7th Cir. 2018) (holding that "an ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments") (citing *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018)). Where the new evidence "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician," then remand is warranted. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).

The Commissioner argues that it is Plaintiff's burden to produce evidence supporting a disability and that she should not fault the ALJ for not having the new evidence evaluated by a medical expert. However, Plaintiff did produce the evidence. What was needed was a medical expert opinion of the evidence, since both Plaintiff and the ALJ are laypersons and unqualified to interpret the medical evidence. As the ALJ was not permitted to make a conclusion regarding the medical evidence without a medical expert opinion, she erred in failing to obtain that expert opinion. Thus, remand is warranted on this issue.

14

Plaintiff also argues that the state agency psychologists based their reviews on outdated evidence. At both reconsideration levels, they found no medically determinable impairments. (Tr. 165, 193-94). As discussed above, the only mental health records available at the time of the hearing was a primary care note that Plaintiff was attending the Four County Counseling Center for a mood disorder (Tr. 543) and Mr. Mykut's opinion (Tr. 535-39), which the ALJ rejected. With this limited record, the ALJ acknowledged a history of depression and anxiety but otherwise indicated that mental status was normal. (Tr. 19).  This court finds that, as with respect to the new evidence of physical impairment, medical expert review of the new mental health evidence is also needed. Thus, remand is also warranted on this issue.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.


Entered: February 9, 2022.

                                                          s/ William C. Lee
                                                          William C. Lee, Judge
                                                          United States District Court